BROMBERG *v.* NORTH AMERICAN LIFE INSURANCE CO.

1. INSURANCE—EVIDENCE—CORONER'S VERDICT—DEATH—AGENCY.
   A certified copy of the coroner's certificate of death obtained by decedent's brother, who testified that he was acting for his father, the beneficiary, and forwarded by him to defendant insurance company, was competent as an admission, notwithstanding the denial of the beneficiary that he knew of or authorized the act.

2. SAME—HEARSAY—CERTIFICATE OF DEATH.
   Under 2 Comp. Laws 1915, § 5607, requiring the coroner to insert the cause of death in his certificate that he files with the board of health, and that a copy thereof shall be *prima facie* evidence in all courts and for all purposes of the facts recorded therein, the court was not in error in admitting in evidence the copy, which was, however, subject to contradiction.

3. SAME—EVIDENCE—SUICIDE.
   That deceased died from a gunshot wound in the head, was not feeling well, a revolver being found in his hand, and no appearance of any struggle discoverable, that no one had access to his rooms, save his own family, considered with proofs of death and public record of the coroner's verdict attributing the cause to suicide, was sufficient to support the verdict of the jury for defendant insurer.

Error to Wayne; Wiest, J., presiding. Submitted January 12, 1916. (Docket No. 105.) Decided June 2, 1916.

Assumpsit by Aaron Bromberg against the North American Life Insurance Company on a policy of insurance. Judgment for defendant. Plaintiff brings error. Affirmed.

*George W. Bates,* for appellant.

*Stellwagen & MacKay,* for appellee.

BIRD, J. Recovery is sought by plaintiff on an insurance policy issued by defendant on the life of Myer Bromberg, December 31, 1910, and payable in the event of death to his father, Aaron Bromberg. The policy contains the provision that it should be incontestible after two years "unless within two years from the date therein, insured shall die by his own hand or act, whether sane or insane." The defense was that the insured committed suicide. It appears that Aaron Bromberg kept a store on Woodward avenue in Detroit, and he and his son lived in rooms over the store. On the morning of June 11, 1912, Myer did not arise at the usual hour, and his father went to his room to see if he wanted anything. He informed his father that he wanted to remain in bed for a time. At 4 o'clock in the afternoon Max, the insured's brother, went to his room and found him lying on his back in bed with a bullet hole in his forehead. The bed was covered with blood, and a revolver was lying on a chair near by. The testimony with reference to the position of the revolver was in conflict. The deputy coroner gave testimony that when he arrived the revolver was still in his hand. It appeared that the insured was unmarried, and was in reasonably good health, and, so far as appears, he had no business or

other troubles which would cause him to take his life. A directed verdict was requested by plaintiff. The trial court was of the opinion that the question of suicide was one for the consideration of the jury, and he accordingly submitted the question to them. They found in favor of the defendant. Plaintiff assigned error: *First,* because certain testimony was admitted; and, *second,* because the court refused to direct a verdict in his behalf.

1. A certified copy of the coroner's certificate of death was obtained by the beneficiary's son Max, and made a part of the proofs of death and forwarded to the defendant company. This certificate recited that the cause of death "was a gunshot wound in head, self-inflicted while temporarily insane." It was objected to on the ground that the beneficiary did not authorize the sending of it. The son Max, who secured the proofs of death, testified that in so doing, and in forwarding the same to the defendant, he was acting for his father. We think the certificate was admissible. It was a part of the proofs of death forwarded to the defendant in pursuance of the terms of the contract, and the beneficiary relied upon it to satisfy a condition precedent to bringing suit. It was in the nature of an admission, but was subject, however, to explanation by the beneficiary if it misstated the facts or was included in the proofs of death without his authority. Subsequent to its introduction, the beneficiary made his explanation of it, and the jury had the benefit of his denial that it was transmitted to the company with his knowledge or consent.

A certified copy of the coroner's certificate of death filed with the board of health, reciting that the insured came to his death from a gunshot wound in the head, self-inflicted while temporarily insane, was also offered and received in evidence. It is said that it

was error to admit the certificate because it was secondary evidence of the cause of death. In making up this certificate of death and filing it with the board of health, the coroner acted in compliance with the statutes of this State. The statute requires the coroner to insert the cause of death, and it further provides that such certificate, when made out and filed, shall be *prima facie* evidence in all courts for all purposes of the facts recorded therein. 1 How. Stat. (2d Ed.), § 1580 (2 Comp. Laws 1915, § 5607). This certificate, being *prima facie* evidence of its contents, was subject to explanation or contradiction if not in accord with the facts. We see no error in its admission.

2. It is further contended that the court erred in refusing to direct a verdict for the plaintiff. The claim is that the burden of showing that the insured committed suicide was upon the defendant, and, as there was no proof that he did suicide, a verdict should have been directed for the plaintiff. It is quite true that the burden of establishing the fact that the insured committed suicide was upon the defendant, and had it appeared that the insured was dead from a gunshot wound in the head, and nothing more, plaintiff would have been entitled to the verdict which he requested, because the law will not presume, under such circumstances, that he committed suicide. 1 May on Insurance, § 325. But when such testimony is followed by other testimony showing the attendant circumstances, and they show in part that on the day in question the insured was not feeling usually well; that when his body was discovered, a revolver was found in his hand; that there was no evidence of any struggle preceding the shooting; that so far as appears no one had access to his room save his own family, and the public records and the proofs of death, made soon after the occurrence, show the cause of death to be suicide—we think an issue of fact is thereby raised for the consideration of the jury.

*Furbush* v. *Casualty Co.*, 133 Mich. 479 (95 N. W. 551).

The judgment must be affirmed with costs of this court to the defendant.

Stone, C. J., and Kuhn, Ostrander, Moore, Steere, Brooke, and Person, JJ., concurred.